**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| FIRST SALES, LLC, d/b/a STERLING | ) | |
| WATER TREATMENT, | ) | |
|       Plaintiff, | ) | |
| | ) | |
|       v. | ) | CAUSE NO.: 1:18-CV-22-WCL-PRC |
| | ) | |
| WATER RIGHT, INC., CLACK | ) | |
| CORPORATION, and WAVE CYBER USA, | ) | |
| LLC/WAVE CYBER CO., LTD., | ) | |
|       Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to File Third Amended Complaint [DE 57], filed by Plaintiff First Sales, LLC ("First Sales") on July 27, 2018. Defendant Clack Corporation ("Clack") filed an amended response on August 15, 2018, and First Sales filed a reply on August 22, 2018. For the following reasons, the Court grants the motion.

## PROCEDURAL BACKGROUND

First Sales initiated this cause of action by filing a Complaint against Defendant Water Right, Inc. ("Water Right") on February 1, 2018. First Sales filed an Amended Complaint against Water Right on March 5, 2018. The Court held a preliminary pretrial conference on April 5, 2018, at which the deadline to file any motion to amend pleadings was set for July 5, 2018. On June 8, 2018, First Sales filed a Second Amended Complaint, which added claims against Clack and Wave Cyber USA, LLC/Wave Cyber Co., Ltd ("Wave Cyber"). Clack and Wave Cyber filed separate Motions to Dismiss the Second Amended Complaint on July 5, 2018, and July 20, 2018, respectively. Those motions are currently pending on the docket. On July 23, 2018, First Sales filed the instant motion, seeking to file a Third Amended Complaint. Only Clack filed a response in opposition.

**ANALYSIS**

In the instant motion, First Sales seeks to amend its complaint in order to remedy purported deficiencies in the Second Amended Complaint, which were identified by Clack in its Motion to Dismiss. Clack opposes the motion on the basis that the amendment would be futile.

Federal Rule of Civil Procedure 15(a) provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has explained that "freely give" means that, in the absence of any apparent or declared reasons (e.g., undue delay, bad faith, dilatory motive), repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to an opposing party, or futility of the amendment, the court should grant leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The standard for futility is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *See Townsel v. DISH Network LLC*, 668 F.3d 967, 969 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). The decision whether to grant or deny a motion to amend lies within the sound discretion of the district court. *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

When a motion for leave to amend pleadings is filed after the deadline by which to do so has elapsed, as is the case here, "the generous standard in Rule 15(a)(2) for allowing amendments 'is in some tension with' Rule 16(b)(4), which governs scheduling orders and requires a showing of good cause to justify modifying time limits." *Adams v. City of Indianapolis*, 742 F.3d 720, 733-34 (7th Cir. 2014) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). "In this situation, the district court is 'entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Id*. at 734. "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720.

The deadline to file motions for leave to amend pleadings expired on July 5, 2018. However, Clack moved to dismiss the Second Amended Complaint on that day, and the instant motion, filed twenty-two days later on July 27, 2018, seeks to address the arguments raised in that Motion to Dismiss. First Sales acted promptly in filing the instant motion. Thus, the Court finds that good cause exists to modify the deadline and to allow First Sales's motion to proceed on the merits.

In the proposed Third Amended Complaint, First Sales alleges that Clack impermissibly tied its water valve to Wave Cyber's water tank in violation of the Sherman Act, the Clayton Act, and Indiana antitrust law. Though First Sales seeks to bring these three separate antitrust claims, no party argues in the briefing of the instant motion that different standards apply to the claims, and Clack has argued elsewhere in the record that the standard is the same for all three antitrust claims (Br.

Supp. Mot. Dismiss 5, n.3, ECF No. 53 (citing *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 592 (7th Cir. 2008) ("the standards for adjudicating tying under the [Sherman Act and the Clayton Act] are now recognized to be the same"); *Orion's Belt, Inc. v. Kayser-Roth Corp.,* 433 F. Supp. 301, 302-03 (S.D. Ind. 1977) ("To interpret the Indiana antitrust statute, the Indiana courts have turned to decisional law under the Sherman Antitrust Act."))). With no party arguing for a different determination on this issue, the Court assumes for the purpose of ruling on the present motion that the standards for the three antitrust claims are identical.

Clack argues that the proposed pleading is futile because First Sales does not make sufficient allegations to state a proper tying claim. Specifically, Clack argues that First Sales's allegations regarding market power, the geographic market, and Clack's economic interest in the tied product are insufficiently alleged.

## A. Market Power

Clack first posits that First Sales insufficiently alleges that Clack has market power. Clack states that "in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006).

In the proposed Third Amended Complaint, First Sales alleges that Clack "has specific market influence and power in the Midwestern region of the United States," "Clack makes superior and unique water softener/treatment valves," Clack "has the most sought after valves in the water treatment valve market," and "Clack has a majority hold on the water softener valve market." (Mot. Amend Ex. 1, ¶¶ 11, 34-36, ECF No. 57-1).

Clack argues that these allegations are insufficient. Without citation, Clack maintains that allegations "normally" found in properly pled antitrust complaints include allegations about sales, revenue, profit, competition, and barriers to entry. Assuming this assertion is true, however, even if a set of allegations are normally used to show market power, it is not logically inconsistent for there to exist another set of allegations that also can show market power. Therefore, the Court will not pursue this unsupported argument further.

Clack proceeds to attack First Sales's allegations individually. Regarding the allegation of a "majority hold on the water softener valve market," Clack argues that "substantially more allegations about market power" were deemed insufficient in *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590 (7th Cir. 2008). However, in *Sheridan*, the allegations were that the defendant was "the fourth-largest United States-based integrated oil and gas company and the fifth-largest petroleum refiner in the United States" and sold "petroleum products to approximately 5,600 Marathon and Speedway branded direct-served retail outlets and approximately 3,700 jobber-served retail outlets." *Id.* at 594. The *Sheridan* court noted that the defendant's sales of gasoline comprised only 4.3 percent of national annual sales, which is "no one's idea of market power." *Id.* at 595. There may have been "more allegations" in *Sheridan* in the sense that more specific data was alleged, but the percent of the market alleged to be controlled by the defendant is much greater in the instant litigation than in *Sheridan*. The comparison of allegations amounting to a 4.3 percent share of national sales to the allegation of a majority hold on the market is not useful.

Clack provides no other authority to support a finding that the allegation of a majority hold is an insufficient allegation of market power. Other courts have found that thirty percent of the relevant market is "the minimum market share from which the market power required to be shown

at the threshold of a tying case can be inferred." *Hardy v. City Optical Inc.*, 39 F.3d 765, 767 (7th

Cir. 1994) (citing *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 672 (7th Cir.1985);

*Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 797 (1st Cir.1988)).

Further, First Sales alleges support for its allegation of market power, including that Clack's

product is superior, unique, and the most sought after product of its kind on the market. Clack

attempts to portray these statements as stand-alone arguments of market power, but the allegations

must be read together to determine if, as a whole, First Sales alleges market power. Clack's

arguments that a product's superiority or uniqueness does not, alone, confer market power is off

point. First Sales does not allege that Clack has market power solely because Clack's valve is

superior or unique. First Sales alleges that Clack's valve is superior and unique *and* that Clack has

a majority hold on the market. Here, at the pleading stage, First Sales's allegations are sufficient to

withstand this challenge.[1]

## B. Geographic Market

Next, Clack asserts that First Sales must allege a "specifically defined and relevant

geographic market" and has failed to do so. (Resp. ¶ 7, ECF No. 69 (quoting *Slep-Tone Entm't Corp.*

*v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 908 (N.D. Ill. 2014)).

Clack maintains that the proposed complaint alleges multiple markets, thus failing to

"specifically define" the geographic market. In the proposed pleading, First Sales alleges that "Clack

is a national water tank valve manufacturer. Clack's online presence avails the entire United States

as its geographic market; however, it has specific market influence and power in the Midwestern

---

[1]The parties also dispute whether a patent can be used to support a finding of market power. Because the allegations are sufficient regardless of whether Clack's patent bolsters the allegation of market power, the Court will not resolve that dispute and the parties' separate interpretations of the relationship between patented products and market power in light of *Illinois Tool Works*.

region of the United States, including Wisconsin, Michigan, Illinois, Indiana, Ohio, Minnesota, Iowa, and Montana [*sic*]." (Mot. Amend Ex. 1 ¶ 11).[2]

Despite Clack's protestations, First Sales alleges that Clack has market power in the Midwestern region, which is specifically defined.[3] The allegation that Clack has a *presence* in the national market is not an allegation of *market power* in that market. This argument does not provide a basis on which to deny leave to amend.

### C. Economic Interest

In tying claims, the tying seller must have some economic interest in the sales of the tied product. *Reifert v. S. Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 317 (7th Cir. 2006). Clack's final argument is that First Sales does not provide adequate allegations of Clack's economic interest in the sales of the product alleged to be tied to Clack's valves: water tanks manufactured by Wave Cyber.

In the proposed pleading, First Sales alleges:

> 126. Water Right, and/or Wave Cyber, and Clack's exclusive agreement or understanding and concerted efforts to tie, price, and sell the separate products of valves and tanks, constitutes a monopoly on Clack valves and is an unreasonable restraint on trade, combination and/or conspiracy to monopolize the water valve and water tank markets.
> 127. On information and belief, as part of this agreement or understanding among the Defendants, Clack, Water Right, and/or Wave Cyber receive commissions, rebates, or kickbacks and/or other monetary benefits.

(Mot. Amend Ex. 1 ¶¶ 126-27).

---

[2]Clack also argues that First Sales has also alluded to an international market, but that reference is to a document found elsewhere in the record. For the purpose of resolving the instant motion, the Court restricts its review to the allegations in the proposed Third Amended Complaint.

[3]Clack notes that the inclusion of Montana in the list of Midwestern states is confusing. Regardless of whether the inclusion of Montana in the list is an error or whether the region is defined atypically, the market, as alleged, is specifically defined.

Clack asserts that the allegations do not rise above the speculative level. To the contrary, however, the allegations quoted above provide a "short and plain statement" on this element of the claim. Fed. R. Civ. P. 8(a)(2). Additionally, First Sales meets the requirement of *Iqbal* and *Twombly* to plead factual matter that, if true, satisfies this element of the claim. Commissions, rebates, kickbacks, or other monetary benefits resulting from the alleged tying agreement can show that Clack had an economic interest in the sales of the water tanks.

The thrust of Clack's argument on the economic interest element is that First Sales's allegations are based on inferences and speculation and are therefore insufficient. Clack relies on the holding in *Twombly* that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). However, *Twombly* did not hold that allegations could not be made on information and belief. Rather, *Twombly* requires a party to do more than "provide a formulaic recitation of the elements of a cause of action." *Id.* That is, to restate the holding in the context of the instate dispute, if First Sales had merely alleged "Clack has an economic interest in the sales of Wave Cyber tanks," then the allegation would not pass muster under *Twombly*. Instead, First Sales makes factual allegations of commissions, rebates, kickbacks, or other monetary benefits. That the allegations were made on information and belief is of no moment. *See City of Evanston v. N. Illinois Gas Co.*, 229 F. Supp. 3d 714, 721 (N.D. Ill. 2017) ("Pleading on information and belief is a 'practical necessity' that is 'desirable and essential [ ] when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject.'" (quoting Charles Wright & Alan Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2016)) (citing *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005))).

Thus, First Sales's allegations of Clack's economic interest are not "speculative" in the sense that would cause them to be insufficient to state a claim under *Twombly*. Accordingly, First Sales's antitrust claims survive this objection.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion for Leave to File Third Amended Complaint [DE 57]. The Court **ORDERS** Plaintiff First Sales, LLC to file its Third Amended Complaint on or before **October 1, 2018**.

SO ORDERED this 26th day of September, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT